## COX v. DELAWARE & HUDSON CO. et al.

(Supreme Court, Appellate Division, Third Department. October 2, 1908.)

1. RAILROADS—CROSSING ACCIDENT—NEGLIGENCE—INTERLOCKING SWITCH AND SIGNAL DEVICES.

Plaintiff, in an action against a railroad company and a street railway company for death of her intestate from collision of a railroad train with a street car, may not give evidence of the existence, at other railroad intersections at grade, of interlocking switch and signal devices, by the proper operation of which a crossing collision is impossible; the crossing, though on a highway, being within the yards of the railroad company, only one of its five tracks there being used by through trains, and only

seven or eight trains passing over it daily, while the other tracks were constantly being used for switching, and the evidence being that it is impracticable to use such devices in railroad yards, because they would congest traffic and seriously interfere with the usefulness of the yards for switching purposes, and, while the interlocking device might have been installed between the main track and the street railroad, the only effect which it would have had would be to protect against a small fraction of the danger, and thereby possibly increase the danger of collision on the other tracks, and it not being probable that the board of railroad commissioners, had their attention been called to the situation, would have directed the erection of such devices under section 36 of the railroad law (Laws 1890, p. 1095, c. 565, as amended by Laws 1898, p. 1174, c. 466).

2. MASTER AND SERVANT—INJURY—FELLOW SERVANTS.
   One stationed by a street railway company at a railroad crossing to make observations and signal the motormen when the railroad tracks were clear, the rules of the street railway company requiring its cars to wait for such signals, on receiving which they might proceed, is not a vice principal, but the fellow servant of motormen and conductors of the street cars.

3. RAILROADS—CROSSING ACCIDENT—NEGLIGENCE—EVIDENCE.
   A railroad company, in an action against it for collision of its trains at a crossing with a street car, killing the street car conductor, may show, as bearing on the question of its freedom from alleged negligence in approaching the crossing at a high speed without ample warning, an agreement made under section 12 of the railroad law (Laws 1890, p. 1087, c. 565, as amended by Laws 1892, p. 1382, c. 676) between it and the street railway company for intersection of the roads, providing that it should be under no obligation to guard, warn, and protect at the crossing the cars and employés thereon of the street railway company, and this, though it be shown that the street railway company in fact employed a signalman at the crossing; the railroad company being entitled to show that it was not relying on a mere gratuitous precaution, but on an agreement whereby the street railway company was obliged to take such precaution.
   Smith, P. J., and Kellogg, J., dissenting in part.

Appeal from Trial Term, Rensselaer County.

Action by Mary A. Cox, administratrix of James D. Cox, deceased, against the Delaware & Hudson Company and the United Traction Company. From so much of the judgment as dismissed the complaint as to the United Traction Company, plaintiff appeals; and from so much of the judgment as awarded damages on a verdict against the Delaware & Hudson Company, and from an order denying a motion for new trial on the minutes, said Delaware and Hudson Company appeals. Affirmed as to the United Traction Company; reversed, and new trial granted, as to the Delaware & Hudson Company.

Argued before SMITH, P. J., and CHESTER, KELLOGG, COCHRANE, and SEWELL, JJ.

Thomas S. Fagan, for appellant Cox.
Lewis E. Carr, for appellant Delaware & Hudson Co.
John E. MacLean, for respondent.

COCHRANE, J.   This is an action to recover damages for the negligent killing of the plaintiff's intestate. The defendant the Delaware & Hudson Company operates a steam railroad extending northerly and southerly through the village of Green Island. Its tracks, five in number, are crossed in that village at right angles and at

grade by a single track of the defendant United Traction Company, which operates an electric street surface railroad. Seventy-four feet westerly of this crossing is another crossing, but that seems to have no bearing on the questions involved herein. Deceased was a conductor in charge of one of the cars of the United Traction Company, and was killed in a collision between such car while proceeding easterly and crossing the tracks of the steam railroad company and a train of said company which was proceeding southerly.

The rules of the electric company required its cars to stop before crossing the steam railroad. A signalman was employed by said company at the place in question, whose duty it was to go on the tracks of the steam railroad and from that point of view to signal the motorman if it was safe to cross, and the latter was by rule prohibited from starting his car until he received such signal. These requirements seem to have been complied with at the time of the accident. The electric car came to a full stop. The signalman went forward to the main track of the steam railroad, and was seen to look in both directions and signal to the motorman. The latter signaled the conductor, who was on the rear platform of his car, and, receiving from him an answering signal, the meaning of which was that the car at his end was in readiness to proceed, the motorman advanced, and when directly on the crossing heard the shriek of the approaching train, and the collision occurred.

At the easterly side of this crossing was a gate, operated by a towerman in the employ of the steam railroad company, and who was stationed in a tower about 10 feet north of the electric road and on the westerly side of the steam road. The electric road at this place is on a public highway, and the operation of this gate seems to have been for the protection of the public using the highway. A short distance north of the tower were locomotives standing on the tracks of the steam railroad and emitting steam. The towerman testified that because of the steam obscuring the track he was unable to see, and that he did not see or hear the approaching train until it was about opposite the tower. There were also freight cars standing north of the locomotives. The motorman also testified that no warning was given by bell or whistle until he was on the crossing, and that until then, because of the obstructions, he was unable to see the approaching train. When the electric car stopped before the crossing the gate on the opposite side of the crossing was down. The motorman testified that it was raised before he started his car. The towerman testified that he did not raise the gate until the electric car had started, when he raised the gate to permit the car to cross. The signalman was not called as a witness.

It seems probable from the testimony that because of the steam from the locomotives standing on the tracks he did not see the approaching train, and without waiting for the steam to pass away improperly signaled the motorman to proceed. Evidence was adduced of the existence in other places of interlocking switch and signal devices at points where railroads intersect at grade. By such a device, properly operated, it is impossible for a collision to occur at railroad intersec-

tions. The plaintiff contended at the trial that it was the duty of these defendants to have established such a system, and that if such system had been established the accident would not have occurred. The learned trial justice, after the evidence had been received, struck it out and dismissed the complaint as to the defendant United Traction Company at the conclusion of plaintiff's evidence.

As I understand the evidence of plaintiff's witnesses on the subject of these interlocking switch and signal devices, they concur in saying that it is impracticable to use such devices in railroad yards, for the reason that they would congest traffic and seriously interfere with the usefulness of the yards for switching purposes. Although the electric railroad at the point in question was on a public highway, nevertheless the crossing was well within the limits of one of the yards of the steam railroad company. Only one of the five tracks of the latter road was a main track on which through trains traveled. All the others were used for switching and storing cars. It is true that this interlocking device might have been installed between the main track and the electric road, and that the collision occurred on the main track. It appears, however, that only seven or eight trains passed during the daytime over the main track, while over the other tracks locomotives and trains were almost continuously switching and moving. It hardly seems, therefore, that these defendants were required to establish a system the only effect of which would be to protect the crossing against a small fractional part of the danger, and thereby possibly to increase the danger of collision on all the tracks except the main track. Nor is it probable, under the evidence here presented, that the board of railroad commissioners, had their attention been called to the situation, would have directed the erection of such devices under section 36 of the railroad law (Laws 1890, p. 1095, c. 565, as amended by Laws 1898, p. 1174, c. 466). We need not, therefore, consider further whether it was the duty of the United Traction Company to invoke the aid of that section for the purpose of compelling co-operation or concerted action by its codefendant with a view to the erection of these devices. Obviously neither defendant could erect such devices without the consent or co-operation of the other, even if such devices were practicable at an intersection within a railroad yard.

Plaintiff requested to go to the jury as to the United Traction Company on the sole grounds that the signalman was the vice principal or alter ego of said defendant, or under the employer's liability act exercised the functions of a superintendent in signaling the motorman. The signalman did not in any proper sense exercise control or supervision over the motorman, nor was he vested with discretion in directing him when to proceed with his car, nor did he have power to vary or control the conduct or action of the motorman. The signal meant merely that the signalman saw no danger, and the motorman under the rule was then not required, but permitted, to proceed with his car not in obedience to the command or direction of the signalman, but in obedience to the command of his employer, promulgated to him through the rule above mentioned that he should not start his car

until he received the proper signal from the signalman.  The duty of observation might have been cast solely on the conductor or motor-man.  But a third man was employed to make observations and communicate them to the motorman.  That was the extent of the signalman's duty.  His functions were largely mechanical, and not material-ly different from those which are performed by an interlocking switch and signal device, or some other appropriate mechanical device, where such exists.  The signalman was clearly a fellow servant of the motor-man and of the deceased, and for any negligence on his part the United Traction Company is not liable herein.  The complaint as to such company was properly dismissed.

The trial justice submitted to the jury the question of negligence on the part of the Delaware & Hudson Company, based on the alleged speed of its train and the absence of sufficient and timely warning.  The evidence presented a question for the consideration of the jury as to the negligence of said company.  Rulings are urged as grounds of reversal.  Only one need be considered.  The appellant company offered in evidence the agreement made between it and the United Traction Company providing for the intersection of the roads in question.  This agreement was made under section 12 of the railroad law (Laws 1890, p. 1087, c. 565, as amended by Laws 1892, p. 1382, c. 676).  The agreement contained a provision that the steam railroad company should be "under no obligation to guard, warn, and protect the cars and servants employed thereon" of the electric railroad company when on the premises of the steam railroad company, and that such cars and servants should "at all times proceed thereover solely at their own risk."  This agreement was excluded on objection of the plaintiff, and I think erroneously.

A party charged with negligence may ordinarily show all that he has done to avoid the accident.  He may show all the circumstances bearing thereon, and the entire situation.  This agreement was not signed by the deceased, nor does it appear that he was aware of its existence, and it was not conclusive against the plaintiff.  But the appellant company had the right to show the manner of doing business at that crossing.  It also had the right to show all the precautions it had taken to guard against accidents.  One of such precautions was to make an agreement with the intersecting company, the effect of which was to cast upon the latter the duty of warning its employés of approaching trains.  How effective such precaution was, or to what extent the steam railroad company was justified in relying thereon, were questions for the consideration of the jury.  Had the Delaware & Hudson Company employed a man to warn the cars of the electric company of approaching trains, undoubtedly it could show such fact, as presenting one element for the consideration of the jury as to whether it had taken necessary and reasonable precautions to avoid collision.  The effect of the agreement excluded by the court was that the United Traction Company was to give such warnings.  The latter company acted on such agreement by employing a signalman and making rules requiring its cars to stop before crossing and await information from the signalman.

It does not entirely meet the argument that it appears in evidence that the electric company in fact made rules and employed a signalman. The appellant company had a right to show that it was relying, not merely on a voluntary or gratuitous precaution on the part of the electric company, which the latter company might or might not observe, but on an agreement whereby the latter company was required to take such precaution. The case of Connolly v. New York Central & Hudson River Railroad Company, 35 App. Div. 609, 55 N. Y. Supp. 118, in principle applies here. There, in an action similar to this, it was held reversible error to exclude a contract similar to the one in question between a steam railroad company and an intersecting street surface railroad company. Under the charge of the court this appellant company has been found guilty of negligence in approaching this crossing at a high rate of speed and without ample warning. As between the two companies it was by agreement relieved from the duty of giving warning; and knowing, as it did, that the other company was under such agreement taking precautions to warn its employés, it was its right to have the jury consider the question as to how far, if at all, because of such agreement, it was relieved of such duty.

The judgment and order should be reversed, and a new trial granted, as to the Delaware & Hudson Company, with costs to said company against the plaintiff to abide the event; and the judgment should be affirmed as to the United Traction Company, with costs to said company against the plaintiff. All concur, except SMITH, P. J., who dissents as to the Delaware & Hudson Co., and KELLOGG, J., who dissents as to both defendants.